**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| KARI LEE BAUMANN, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | Case No. 2:12-CV-00713-EJF |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | Magistrate Judge Evelyn J. Furse |
| Defendant. | |

Plaintiff Kari Lee Baumann filed this action asking the Court to reverse or remand the final agency decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-34 (2010), and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see* 42 U.S.C. §§ 1381-1383f (2010). In accordance with 28 U.S.C. sections 636(c)(1) and (3) and Federal Rule of Civil Procedure 73, the parties have consented to proceed before the undersigned United States Magistrate Judge. Based on the Court's careful consideration of the record, the parties' memoranda, and relevant legal authorities, the Court REMANDS the Commissioner's decision.[1]

## FACTUAL HISTORY

Ms. Baumann filed her first set of applications for DIB on May 22, 2007 and SSI on September 24, 2007, both alleging an onset date of disability of February 4, 2007. (Tr. 19.) The Social Security Administration denied Ms. Baumann's claim initially on May 15, 2008 and upon

---

[1] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

reconsideration September 4, 2008.  (Tr. 131.)  Ms. Baumann requested a hearing before an Administrative Law Judge ("ALJ") on November 12, 2008.  (*Id.*)  The hearing took place on October 2, 2009.  (Tr. 35-75.)  On January 14, 2010, the ALJ issued a decision denying Ms. Baumann's claims.  (Tr. 128-45.)  Ms. Baumann subsequently, on February 4, 2010, requested that the Social Security Appeals Council ("Appeals Council") review the ALJ's unfavorable decision.  (Tr. 19.)

On March 24, 2010, while the Appeals Council considered Ms. Baumann's first set of applications, Ms. Baumann filed a second set of applications.  (*Id.*)  Notably, the second set of applications included no new medical opinions given after the October 2, 2009 hearing date.  (Tr. entire.)  The state agency determined that Ms. Baumann became disabled on March 4, 2010.  (Tr. 19.)  On November 23, 2010, the Appeals Council affirmed the state agency decision.  (Tr. 149-51.)  The Appeals Council also vacated ALJ's January 14, 2010 decision and remanded the case to the ALJ primarily to determine whether Ms. Baumann was disabled from her alleged onset date of February 4, 2007 through March 23, 2010.  (*Id.*)

In conformance with the Appeals Council's order, the ALJ held a second hearing on July 20, 2011.  (Tr. 76-122.)  On August 24, 2011 the ALJ issued a new decision finding that Ms. Baumann did not qualify as disabled from her alleged onset date the State agency found her disabled on her second application.  (Tr. 16-31.)  On August 25, Ms. Baumann requested review of the ALJ's August 2011 decision.  (Tr. 14-15.)  The Appeals Council denied Ms. Baumann's request for review (Tr. 4-6), making the ALJ's August 2011 decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. section 405(g).  *See* 20 C.F.R. § 404.981.

**FACTUAL BACKGROUND**

Ms. Baumann was born on July 7, 1962.  (Tr. 238.)  She earned a Bachelor of Science degree in Animal Science from the University of California Davis, with an emphasis in Managerial Economics.  (Tr. 300, 385.)  She has past work experience as a veterinary technician, bookkeeper, business manager, and supervisor.  (Tr. 384-85.)

Prior to February 4, 2007, Ms. Baumann had good health and led an active life.  (Tr. 25.) However, on February 4, 2007, Ms. Baumann went to the emergency room ("ER") where she reported a burning sensation in her head and that she recently passed out.  (Tr. 614-15.)  The ER physician Dr. Todd Haderlie, M.D., found that she fainted as a result of overmedication for hypertension.  (Tr. 615.)

On February 19, 2007, Ms. Baumann went to see Dr. Greg Taylor, M.D., with concerns of slurred speech.  (Tr. 612.)  She had a positive Romberg's sign (demonstrating decreased motor coordination).  (*Id.*)  The physician noted that Ms. Baumann's speech "seemed a little slurred…." (*Id.*)  Dr. Taylor recommended that Ms. Baumann undergo a magnetic resonance imaging exam ("MRI").  (Tr. 612.)  Ms. Baumann's MRI results appeared normal.  (Tr. 613.)

On April 23, 2007, Ms. Baumann saw a neuropsychologist Kent Gregory, Psy. D.  (Tr. 815-18.)  Dr. Gregory found Ms. Baumann's auditory learning capacity ranged from borderline to severely impaired.  (Tr. 816.)  Ms. Baumann's short term visual memory ranged from mild to moderate impairment for her age.  (*Id.*)  Her intellectual function fell in the low average range. (*Id.*)

On May 31, 2007, Ms. Baumann became concerned about a possible stroke and went to the ER.  (Tr. 624.)  After an examination, the treating physician could not determine the cause of Ms. Baumann's symptoms and found that she did not seem to have a serious illness.  (Tr. 631.)

On June 6, 2007, Ms. Baumann's family practitioner Dr. Brian Rush, M.D., noted that Ms. Baumann was very weak on her right side, had tremors, poor coordination, slow cognitive abilities, and slurred speech. (Tr. 606.) Dr. Rush completed a workplace functional ability report for the Utah Department of Workforce Services finding Ms. Baumann could not work at all due to her slurred speech, right side weakness, and difficulty concentrating. (Tr. 545.) Later that month, on June 19, 2007, Ms. Baumann saw neurologist Robert Summerfield, M.D. (Tr. 641-42.) Dr. Summerfield noted that her symptoms seemed to be worsening which is not typical of a stroke diagnosis. (Tr. 642.)

On November 11, 2007, Dr. Gregory completed a mental residual functional capacity ("RFC") assessment. (Tr. 655-57.) Dr. Gregory found Ms. Baumann would miss five days of work per month and could not complete an eight-hour work day. (Tr. 656.) Dr. Gregory also found that Ms. Baumann would not remember detailed information well. (*Id.*)

On March 28, 2008, Ms. Baumann saw speech language pathologist Tom Gurrister. (Tr. 675-76.) Mr. Gurrister noted that Ms. Baumann had marked impairment in her immediate memory as well as auditory processing and retention. (Tr. 675.) Mr. Gurrister found her receptive vocabulary skills to be normal. (Tr. 676.)

On March 31, 2008, state agency physician David Peterson, M.D., reviewed Ms. Baumann's medical record. (Tr. 682.) Dr. Peterson could not identify a specific severe medically determinable impairment. (*Id.*) A second state agency physician, Rox Burkett, M.D., reviewed the record in July 28, 2008, and affirmed Dr. Peterson's assessment. (Tr. 764.) Dr. Burkett commented that Ms. Baumann's "physical allegation appears partially credible per [Ms. Baumann's] medical records." (Tr. 763.)

On April 14, 2008, state agency psychologist John Hardy reviewed Ms. Baumann's medical record. (Tr. 681.) Dr. Hardy noted that although Ms. Baumann "may have experienced a decrease in ability since her incident, she still functions in the average to low average range." (Tr. 681.) A state agency psychiatrist, Dawson Hedges, reviewed the record on September 4, 2008. (Tr. 765-84.) Dr. Hedges noted that Ms. Baumann's allegations appeared partially credible. (Tr. 765.)

On August 25, 2008, Ms. Baumann saw psychologist Elizabeth Allen, Ph.D. for a psychological evaluation. (Tr. 741-56.) Dr. Allen noted Ms. Baumann had average concentration and attention, below average immediate memory, and some articulation difficulty. (Tr. 745.) Dr. Allen observed a slight tremor in Ms. Baumann's hands and arms as well as occasional word finding problems. (Tr. 742.)

On December 2, 2008, Ms. Baumann established care with a new family practitioner, Timothy Odell, M.D. (Tr. 883-90.) Dr. Odell noted speech difficulties. (Tr. 869.) The brain MRI appeared normal. (Tr. 872.)

On April 9, 2009, Ms. Baumann saw ophthalmologist Kathleen Digre, M.D. (Tr. 829-31.) Dr. Digre indicated that Ms. Baumann had abnormal twitching of her eyelids, as well as migraines with light sensitivity and nausea. (Tr. 831.) Dr. Digre diagnosed Ms. Baumann with blepharospasm, Meige syndrome, and apraxia of eyelid opening. (*Id.*)

On May 28 and June 29, 2009, Ms. Baumman again visited Dr. Odell. (Tr. 914.) Dr. Odell noted that she had an increased tremor in the right upper extremity during the examination. (*Id.*) Dr. Odell also noted that she had stuttering speech. (Tr. 906.)

On July 13, 2009, Ms. Baumman saw neurologist David Shprecher, D.O. (Tr. 933-36.)

Dr. Schpecter noted that Ms. Baumman had significant difficulty with short term recall, and she transposed word pairs. (Tr. 935.) Dr. Schpecter observed a blepharospasm when testing her visual fields and with pupil testing. (*Id.*) He also observed an irregular tremor in her right upper and lower extremities. (*Id.*) Dr. Schpecter diagnosed Ms. Baumann with chronic regional pain syndrome with associated dystonia and autonomic symptoms. (*Id.* at 936)

On August 2, 2009, Ms. Baumann saw Dr. Sanjay Smith, M.D. (Tr. 927-28.) Dr. Smith observed photophobia in her right eye during the exam. (*Id.*)

On October 9, 2009, during the second hearing before the ALJ, Ms. Baumann claimed to have episodes where she loses consciousness. (Tr. 39-40.) She claimed to have six of these episodes in the thirty days leading up to the hearing. (Tr. 44.) She also claimed to have chronic nausea and headaches, difficulty walking, poor balance, poor memory, and difficulty speaking. (Tr. 45-55.)

On July 31, 2010, Ms. Baumann saw psychologist Jonathan Ririe, Ph.D. and underwent a psychological evaluation. (Tr. 1008-09.) Dr. Ririe found Ms. Baumann had borderline intellectual ability and opined that she appears to have "some cognitive/neurological difficulties." (Tr. 1008.) Additionally, Dr. Ririe thought Ms. Baumann had signs and symptoms consistent with major depressive disorder and that she would need assistance in the management of her finances. (Tr. 1008-09.)

On August 11, 2010, Ms. Baumann saw Dr. Patricia Truhn, Ph.D. (Tr. 566.) Dr. Truhn's evaluation considered the period from August 16, 2006 until August 11, 2010. (Tr. 566.) Dr. Truhn felt that Ms. Baumann met listing descriptions (12.02A2, 12.02A5, 12.02B1, 12.02B3). (Tr. 566.)

**STANDARD OF REVIEW**

42 U.S.C. section 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of

7

the evidence," *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).

The court does not have to accept the Commissioner's findings mechanically, but "examine the

record as a whole, including whatever in the record fairly detracts from the weight of the

[Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test

has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks

and citation omitted). "'The possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by

substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly

conflicting views, even though the court would justifiably have made a different choice had the

matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d

1195, 1200 (10th Cir. 2004)).

   In addition to a lack of substantial evidence, the Court may reverse where the

Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on

the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson

v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*,

985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

   The Social Security Act ("Act") defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover,

the Act considers an individual disabled "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

In this case, the ALJ applied the five-step sequential disability evaluation and made the following findings of fact and conclusions of law with respect to Ms. Baumann:

1. "[Ms. Baumann] has not engaged in substantial gainful activity since February 4, 2007, the alleged onset date." (Tr. 23.)
2. "[Ms. Baumann] has the following severe impairments: cognitive disorder, adjustment disorder, tremors, speech disorder and nausea." (Tr. 23.)
3. "[Ms. Baumann] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 23.)
4. Further, "[Ms. Baumann] had at least the [RFC] to perform the full range of sedentary, unskilled work" with several limitations. (Tr. 24.)
5. "[Ms. Baumann] is unable to perform any past relevant work." (Tr. 29.)
6. "Considering [Ms. Baumann]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Ms. Baumann] can perform." (Tr. 29-30.)

In short, the ALJ found that Ms. Baumman did not engage in substantial gainful activity since her alleged onset date because she had several severe impairments.  (Tr. 23.)  Despite those impairments, the ALJ found Ms. Baumann could still perform sedentary work and therefore did not qualify for DIB.  (Tr. 29-30.)  Ms. Baumann challenges the ALJ's determination on five grounds.

## I. Evaluation of Medical Opinion Evidence

Ms. Baumann argues the ALJ failed to evaluate the medical opinion evidence properly.  (Pl.'s Opening Br. 16-20.)  Ms. Baumann specifically argues the ALJ improperly evaluated the opinions of Mr. Gurrister and Drs. Gregory, Odell, Ririe, Rush, and Truhn. (Pl.'s Opening Br. 17.)

An ALJ must evaluate every medical opinion.  20 C.F.R. § 404.1527(c).  A treating physician's opinion may be entitled to controlling weight if the ALJ finds it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  Even if a treating opinion does not receive controlling weight, it is still entitled to deference, and the ALJ must make clear how much weight he gave the opinion (including whether he rejected it outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.  *Watkins v. Barnhard*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  If the ALJ does not make this analysis, the Court will remand the case.  *Id.* at 1301.  When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider certain factors.  20 C.F.R. section 404.1527(c) provides these factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency

between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted).  In applying these factors, the ALJ must make his findings "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight."  *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation omitted).  To reject a medical opinion, the ALJ must provide "'specific, legitimate reasons.'"  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996)).

Ms. Baumann points out the ALJ gave Dr. Gregory's opinion little weight.  (Pl.'s Opening Br. 17.)  The ALJ explained that he assigned little weight to the physician's opinion for the specific, legitimate reason that the medical evidence did not support Dr. Gregory's determinations.  (*See* Tr. 27.)  Dr. Gregory opined that Ms. Baumann had "marked" limitations in many of her mental functional abilities, however as the ALJ pointed out, Dr. Gregory's tests indicated that her memory fell in the "low average range" with only "mild to moderate" impairment.  (Tr. 992-93.)  Further, Dr. Gregory noted that Ms. Baumann's test results suggested the potential for symptom magnification.  (Tr. 994.)  Additionally, the ALJ considered that Dr. Gregory's opinion contradicted Dr. Allen's observations and the "great weight" of other clinical evidence.  (Tr. 27.)  Thus, substantial evidence supports the ALJ's evaluation of the Dr. Gregory's medical opinion evidence.

Ms. Baumann argues that the ALJ erred by failing to assign weight to the opinion of speech language pathologist Tom Gurrister.  (Pl.'s Opening Br. 19.)  The Court disagrees.  The ALJ did not reject Mr. Gurrister's opinion.  (Tr. 27.)  In fact, the ALJ relied on Mr. Gurrister's

opinion, in addition to his own observations of Ms. Baumann during the hearing, to "significantly" alter Ms. Baumann's RFC.  (*Id.*)  Accordingly, the ALJ found Ms. Baumann "would not be able to perform jobs which require speaking duties as a central component."  (*Id.*)  Thus, substantial evidence supports the ALJ's evaluation of Mr. Gurrister's medical opinion evidence.

Next, Ms. Baumann argues that the ALJ erred by failing to assign weight to the opinions of Drs. Odell and Rush.  (Pl.'s Opening Br. 18-19.)  These doctors rendered their opinions in a check-box format without significant explanation of observations that support the physicians' conclusions.  (*see* Tr. 545, 550.)  Although "a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence," the ALJ still must give specific, legitimate reasons for doing so.  *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988); *Watkins, 350 F.3d at 1301.*  Here the ALJ rejected Drs. Odell and Rush's opinions without providing specific, legitimate reasons for doing so.  (*See* Tr. 26-29.)  The Court finds this error serious.  Therefore, the Court remands for the ALJ to consider Drs. Odell and Rush's medical opinions and assign a weight to them.

Lastly, Ms. Baumann argues that the ALJ failed to assign weight to the opinions of Drs. Ririe and Truhn.  (Pl.'s Opening Br. 18-19.)  Ms. Baumann visited each of these doctors after her disability determination date of March 23, 2010.  (Tr. 28-29.)  The ALJ did not assign the Dr. Ririe's opinion a weight and did not consider Dr. Truhn's opinion at all in his order.  (*Id.*)  The ALJ opined that Dr. Ririe's opinion occurred after Ms. Baumann's disability onset date and that "her condition has steadily declined."  (Tr. 29.)  The ALJ likely assumed that because Ms. Baumann's condition worsened over time, Dr. Ririe's opinion would not accurately reflect Ms. Baumann's condition during the time period in question.  However, the ALJ must  assign weight

12

to a medical opinion and give good reasons to support that weight. *Watkins*, 350 F.3d at 1300-01. The ALJ did not consider Dr. Truhn's opinion, perhaps because the assessment also occurred after Ms. Baumann's disability onset date. (*See* Tr. 26-29.) The ALJ erred, as Dr. Truhn's assessment looked at the entire time period from 2006 until 2011, and this assessment may have value in tracking the progression of Ms. Baumann's disability. (*see* Tr. 566.) The ALJ had to give specific, legitimate reasons for rejecting Dr. Truhn's opinion. *Watkins*, 350 F.3d at 1300-01. The Court finds this error serious. Therefore, the Court remands for the ALJ to consider Drs. Ririe and Truhn's medical opinions and assign a weight to them.

## II. Rejection of Impairments at Step Two

Ms. Baumann argues the ALJ erred at step two of the sequential evaluation process by not finding headaches, reflex sympathetic dystrophy with autonomic symptoms, and bletharospasm to qualify as severe impairments. Ms. Baumann argues headaches, reflex sympathetic dystrophy with autonomic symptoms, and bletharospasm constitute severe impairments because they "cause significant functional limitations and, therefore, are not groundless complaints." (Pl.'s Opening Br. 15.)

Step two of the sequential evaluation process requires the ALJ to decide whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments qualifies as severe when it significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). If the ALJ does not find at step three that the claimant's impairment or impairments meets or equals a listing in appendix 1, the ALJ continues at step four to determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(iii)–(iv). In determining residual functional capacity, the ALJ considers all medically determinable impairments, including non-severe impairments. 20 C.F.R. §

13

404.1545(a)(2).  Because the ALJ considers both severe and non-severe impairments at later

steps, any failure to designate additional severe impairments at step two is harmless if the ALJ

finds at least one severe impairment and continues with the sequential evaluation process.

*Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Brescia v. Astrue*, 287 F. App'x 626,

629 (10th Cir. 2008).

      Here, the ALJ found at step two of the sequential evaluation process that Ms. Baumann

had severe impairments consisting of "cognitive disorder, adjustment disorder, tremors, speech

disorder and nausea."  (Tr. 23.)  Having found that Ms. Baumann possessed these severe

impairments, the ALJ continued with the sequential evaluation process.  (Tr. 23-31.)  In

determining Ms. Baumann's RFC, the ALJ considered "all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence

and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p

and 96-7p" in addition to "opinion evidence in accordance with the requirements of 20 CFR

404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  (Tr. 24.)  Because the ALJ

found severe impairments at step two and continued with the sequential evaluation process, any

error at step two qualifies as harmless.

### III. Rejection of Ms. Baumann's Subjective Complaints

      Ms. Baumann argues substantial evidence does not support the ALJ's rejection of her

subjective complaints.  (Pl.'s Opening Br. 20–23.)  The Court disagrees.

      "'Credibility determinations are peculiarly the province of the finder of fact, and [a court]

will not upset such determinations when supported by substantial evidence.'"  *Kepler v. Chater*,

68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d

774, 777 (10th Cir.1990)).  "However, '[f]indings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"
*Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).   If objective medical
evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's
assertions of severe pain and decide the extent to which the ALJ believes the claimant's
assertions.   *Id.*   But this analysis "does not require a formalistic factor-by-factor recitation of the
evidence.   So long as the ALJ sets forth the specific evidence he relies on in evaluating the
claimant's credibility, the dictates of *Kepler* are satisfied."   *Qualls v. Apfel*, 206 F.3d 1368, 1372
(10th Cir. 2000).

The ALJ examined Ms. Baumann's complaints in turn.   (Tr. 26–29.)   For each such
complaint, the ALJ set forth whether the record contains any objective medical evidence to
support the complaint and provided specific reasons for the credibility accorded Ms. Baumann's
complaints.   (*Id.*)   The ALJ found that Ms. Baumann's "medically determinable impairments
could reasonably be expected to cause the alleged symptoms; however, the claimant's statements
concerning the intensity, persistence and limiting effects of these symptoms are not fully
credible."   (Tr. 26.)   For this reason, the ALJ limited Ms. Baumann's residual functional capacity
to a range of sedentary, unskilled work that required no more than minimal concentration and
memory.   (Tr. 24.)

Initially, the ALJ discounted Ms. Baumann's subjective complaints of limited capabilities
due to pain, fatigue, and nausea because Ms. Baumann did not produce any objective medical
evidence to support her claims.   (Tr. 26.)   For example, the ALJ noted MRI scans, CT scans, x-
ray reports, lab work, tilt table tests, and neurological examinations "have all been negative or
shown only minimal findings."   (*Id.* (omitting citations).)   Additionally, the ALJ noted Ms.
Baumann admitted  to performing day-to-day activities such as doing laundry, washing dishes,

15

shopping, paying bills, and driving a car.  (*Id.*)  The ALJ noted that these activities are inconsistent with Ms. Baumann's complaints.  (*Id.*)  An ALJ may consider a claimant's inconsistent statements in weighing credibility.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (noting "an ALJ may engage in ordinary techniques of credibility evaluation, such as considering . . . inconsistencies in claimant's testimony"); 20 C.F.R. § 404.1529(c)(3)(vii).

Next, the ALJ noted a similar lack of evidence with regard to Ms. Baumann's complaints memory and concentration difficulties.  (Tr. 26-27.)  The ALJ noted that Dr. Allen's testing showed Ms. Baumann had below average immediate memory, but she had average concentration and attention.  (Tr. 27.)  Additionally, the ALJ observed that, during the administrative hearing, that although "[Ms. Baumann] did have some difficulty [responding to questions], [the ALJ] had no difficulty understanding [Ms. Baumann]."  (*Id.*)  An ALJ may consider his own observations as one of numerous factors in determining the credibility of subjective complaints.  *See Qualls*, 206 F.3d at 1373 ("Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility.").

Because the ALJ set forth specific evidence to support the determination of Ms. Baumann's credibility, this Court finds no error in the ALJ's rejection of Ms. Baumann's subjective complaints.  *See id.* at 1372.  On remand, the ALJ should reconsider Ms. Baumann's subjective complaints in light of Drs. Odell, Rush, Ririe, and Truhn's weighted opinions.

### IV. Jobs in the National Economy

At step five of the sequential evaluation process, the ALJ found Ms. Baumann not disabled during the time period from February 4, 2007 through March 23, 2010.  The ALJ consulted a vocational expert regarding jobs Ms. Baumann could perform.  (Tr. 114-22.)  The

16

ALJ questioned the vocational expert during Ms. Baumann's hearing about a hypothetical individual with several limitations.  (Tr. 114-15.)  During the hearing, the vocational expert testified that a person with the hypothetical limitations could do the work of several identified jobs in the national economy.  (Tr. 116-19.)  The ALJ relied on vocational expert testimony in finding jobs existed in the national economy in significant numbers, including jobs as an addressor, a mail clerk, and an egg processor that Ms. Baumann could perform.  (Tr. 30.)  We cannot accept this decision, as the ALJ based his hypothetical description on incomplete information, failing to consider all of the medical evidence.[2]  "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'"  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (*quoting Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990));

On remand the ALJ's hypothetical questions should reflect the weighted opinions of Drs. Odell, Rush, Ririe, and Truhn.

## IV. Onset Date

The plaintiff next complains that SSR 83-20 requires the ALJ to call on a medical advisor to determine the onset date of her disability.  The Commissioner responds by asserting SSR 83–20 does not apply where, as here, the ALJ finds at step five that jobs exist that Ms. Baumann could perform during the time period in question.  In short, because the ALJ found Ms. Baumman not disabled during the time period he considered on remand, February 4, 2010 through March 23, 2010, the Commissioner asserts the ALJ does not have to call upon a medical advisor.  This argument fails.

---

[2] *See* Supra Part I: Evaluation of Medical Opinion Evidence.

SSR 83-20 is "binding on all components of the Social Security Administration" and sets forth a framework for assessing the date of onset for a disability. *Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006); 20 C.F.R. § 402.35(b)(1). SSR 83–20 states that "[i]n disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83–20 (1983). In some cases the ALJ may have to "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id*. Determining an onset date for slowly progressing impairments may prove particularly difficult. *Id*. Whenever the ALJ must infer onset, the ALJ should call on the services of a medical advisor. *Blea v. Barnhart*, at 909; *Reid v. Chater,* 71 F.3d 372, 374 (10th Cir. 1995); *see also Bailey v. Chater,* 68 F.3d 75, 79 (4th Cir.1995) ("[I]f the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires."). The onset date "'can never be inconsistent with the medical evidence of record.'" *Blea v. Barnhart*, at 909 (quoting SSR 83-20).

Ms. Baumann's condition has developed over time. (Tr. 642.) The ALJ acknowledged this fact. (Tr. 29.) Furthermore, the medical evidence is ambiguous. So ambiguous, that in January 2010 the ALJ determined Ms. Baumann not disabled, and two months later the state agency came to the opposite conclusion based on the same evidence. The state agency found Ms. Baumann became disabled on March 23, 2010. However, Ms. Baumann's last medical examination prior to the state agency determination was in August 2009, almost eight months prior to the decision. Nothing in the record points to an event of medical significance occurring on or near March 23, 2010. The Commissioner offers no medical explanation for the onset date of March 23, 2010, and the Appeals Council remand to ALJ recognized the uncertainty

surrounding Ms. Baumann's disability onset date.  The onset date must have grounding in the medical evidence.  SSR-83-20.  This requirement is "binding on all components of the Social Security Administration," including the ALJ.  *Blea v. Barnhart*, at 909; 20 C.F.R. § 402.35(b)(1). In cases like this, where a claimant has already been found disabled under another title of the Social Security Act and the onset date is not based on medical evidence, SSR 83–20 requires the ALJ to determine the onset date of disability and provides an analytical framework for determining that date.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court REMANDS the Commissioner's decision for further administrative proceedings consistent with this opinion.

SO ORDERED this 30th day of September, 2013.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge